AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  2:25-mj-450 |
| | ) | |
| Garry Leon TINDALL | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____July 31, 2025_____ in the county of _____Franklin_____ in the
___Southern___ District of _____Ohio_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Cospiracy to Posses with Intent to Distribute 5 kilgorams or more of Cocaine, and 100 grams or more of Fentanyl |
| 18 U.S.C. 924(c)(1)(A) | Possession of a Firearm in Furtherance of Drug Trafficking |

This criminal complaint is based on these facts:

See attached Affidavit, which is incorporated by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Alexa Hood, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___August 4, 2025___

_____
Kimberly A. Jolson
United States Magistrate Judge

City and state:  _____Columbus, Ohio_____

**AFFIDAVIT**

I, Alexa L. Hood, being duly sworn, depose and state the following:

**INTRODUCTION**

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March of 2021.  As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.  I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878.  I hold a Bachelor's Degree in Political Science from the University of Akron.  I have completed the DEA Basic Agent Training Academy, which is a 16-week course in Quantico, Virginia that included training in the following areas: surveillance, undercover operations, confidential source management, search warrant operations, case initiation and development, interview and interrogation, and other topics related to criminal investigations.  I continue to receive training daily by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

2. Prior to the DEA, I was a sworn police officer with the State of Ohio working as an Enforcement Agent for the Ohio Investigative Unit under the Ohio Department of Public Safety for approximately three years. During the course of my career as a police officer, I have participated in numerous investigations and executed numerous search warrants related to narcotics possession, narcotics trafficking, and illegal firearms.

1

## PURPOSE OF AFFIDAVIT

3.    This affidavit is made in support of an application for federal arrest warrants and criminal complaints against Garry Leon TINDALL ("**TINDALL**") and ████████████ ███████████████████ for:

a.  Conspiracy to Possess with Intent to Distribute:

    i.    5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 United States Code, Section 841 (a)(1) and (b)(1)(A)(ii), and

    ii.   400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4—piperidinyl] propanamide (commonly known as fentanyl), in violation of Title 21, United States Code, Section 841 (a)(1) and (b)(1)(A)(vi), all in violation of Title 21, United States Code, Section 846.

b.  Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c).

4.    My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that **TINDALL** and ████████ committed the above offenses.

## SUMMARY OF PROBABLE CAUSE

5.  In March of 2025, investigators were contacted by another DEA office in regard to a Confidential Source (CS-1[1]) who had information pertaining to **TINDALL** and his drug trafficking organization. The CS stated that **TINDALL** was a kilogram level drug dealer from

---

[1] CS1 has pending drug charges and is cooperating with law enforcement for case consideration. Based upon information provided to me from other agents/officers who had prior conversations with CS1 and based upon the fact that CS1's information has been corroborated through other law enforcement means. I believe that the

2

Bakersfield, California, operating in the Columbus, Ohio, area and provided investigators with **TINDALL**'s telephone number.

6.      In July of 2025, members of the DEA Columbus District Office ("DEA CDO") established an investigation into **TINDALL** and his associate, ████████, as well as a residence associated with them, located at 313 East Capital Street, Apartment 611, Columbus, Ohio.

7.      On or about July 17, 2025, investigators applied for and obtained a State of Ohio Court Order to obtain geo-location data on **TINDALL**'s telephone in the Franklin County Court of Common Pleas by the Honorable Judge Mark Serrott. On or about July 28, 2025, investigators observed the geo-location data of **TINDALL**'s telephone in the area of the John Glenn International Airport in Columbus. On the same date, investigators contacted the Regional Airport Authority to obtain surveillance footage of **TINDALL**. Through airport surveillance footage, **TINDALL** is observed walking around the airport, with two backpacks, entering into a black Audi bearing Ohio registration KOW6361 ("Audi"), which was registered to **TINDALL**, and departing the area. Later that day, investigators observed the geo-location data on **TINDALL**'s telephone in the area of 321 Capital Street, Columbus, Ohio, 43215, which is the location of The Pierce apartment complex.

8.      On the same date, investigators arrived at 321 East Capital Street to obtain surveillance footage of **TINDALL** in The Pierce. Through surveillance footage, investigators were able to locate **TINDALL** and ████████ arrive and park the Audi in the garage of 321 East Capital Street on July 28, 2025, at approximately 2:36 a.m. Based on the surveillance footage, investigators believe that ████████ picked up **TINDALL** at the John Glenn

---

information provided by CS1 relative to the instant investigation is credible.

International Airport. The footage showed **TINDALL** and ███████ enter into Apartment 611 via key at approximately 2:40 a.m. The surveillance footage shows ███████ unlocking the door to Apartment 611.

9.      On July 28, 2025, investigators issued an administrative subpoena to The Pierce and LBC Property Management for renter information for 313 East Capital Street, Apartment 611.  The information returned indicates that Apartment 611 was rented in a fictitious name, utilizing a fictitious driver's license.  The name and number listed on the driver's license do not resolve to an actual person in law enforcement databases.

10.      On July 28, 2025, investigators obtained additional surveillance footage from The Pierce. The surveillance footage showed on July 27, 2025, ███████ bringing in four suitcases and a backpack, and unlocking Apartment 611. Once ███████ brought all of the suitcases and backpack into Apartment 611, the surveillance footage shows ███████ leaving Apartment 611 with two suitcases and a backpack. In addition, the footage shows that ███████ has direct access to Apartment 611 in that he utilizes a key to lock and unlock the door. Based on investigator's training, experience, and knowledge of the case, investigators know that often drug traffickers conceal their narcotics within large bags. In addition, investigators know that drug traffickers often utilize "stash houses" which is a location to store narcotics and/or drug proceeds.

11.      On July 30, 2025, investigators established surveillance on **TINDALL** and ███████ at 321 East Capital Street. At approximately 12:30 p.m., investigators observed ███████ exit Apartment 611 carrying a black crossbody bag and what appeared to be a brown paper grocery bag. Investigators observed ███████ enter the Audi and depart the garage of 321 East Capital Street, and surveillance was maintained on the Audi.

4



12.

13.

14. On the same date, investigators observed **TINDALL** in the garage of 321 East Capital Street. At the same time as **TINDALL** appeared in the garage, ▮▮▮▮▮ exited 321 East Capital Street and walked westbound on foot towards the same vehicle which investigators have previously observed ▮▮▮▮▮ driving – a white Toyota Highlander. At that time, **TINDALL** entered the Audi and ▮▮▮▮▮ entered into the Highlander, bearing Ohio

5

Registration KMM 9395, which is also registered to **TINDALL**, and departed the area. Law enforcement maintained surveillance on the Audi.

15. While conducting surveillance on the same date, investigators obtained surveillance footage from the 6th floor hallway at approximately 4:19 p.m. The footage shows **TINDALL** and █████ exit Apartment 611. The footage shows **TINDALL** exiting Apartment 611 carrying a black trash bag. The footage then shows **TINDALL** walking in the garage of 321 East Capital Street no longer carrying the black trash bag. Surveillance cameras are not located near the trash chute on the 6th floor hallway, but investigators believe that **TINDALL** placed the black trash bag into the trash chute. Approximately 15 minutes later, investigators entered the apartment complex and entered the trash room. Investigators observed a large blue dumpster with the lid open, so the trash bags were visible. Investigators observed the black trash bag sitting on top of all the other trash bags and did not observe another black trash bag sitting within the blue dumpster. Investigators took a photograph of the trash, retrieved the black trash bag, and searched through it. Investigators located and seized one kilogram wrapper, one kilogram wrapper within a plastic Ziplock bag, two rubber gloves, and two additional plastic wrappers. Investigators transported the evidence to the DEA CDO. Investigators conducted a field test on the Ziplock bag, two kilogram wrappers, rubber gloves, and one plastic wrapper which all yielded a positive field test for the presence of cocaine.

16. On July 30, 2025, investigators applied for a State of Ohio search warrant for the residence located at 321 East Capital Street, Apartment 611, in the Franklin County Municipal Court and the warrant was authorized by the Honorable Cynthia Ebner.

17. On July 31, 2025, at approximately 6:50 a.m., investigators observed the geo-

6

location data on **TINDALL**'s cellular device in the area of the John Glenn International Airport. The property manager stated that ███████ left the apartment complex at the same time as **TINDALL**. At that time, investigators reached out to the Columbus Airport Police in an attempt to locate **TINDALL** within the airport. At that time, investigators with the Columbus Airport Police observed **TINDALL** at the United ticket counter checking two luggage bags. Investigators with the Columbus Airport Police located and briefly detained the two luggage bags that were associated to **TINDALL**. An officer with the Columbus Airport Police and his certified drug K-9 partner conducted a free air sniff of the two luggage bags which resulted in the positive alert to the presence of narcotics coming from the luggage. At that time, investigators applied for and obtained a State of Ohio search warrant for the two luggage bags. During a probable cause search of the luggage, investigators located and seized approximately $60,000 in United States currency that was concealed within the insole of multiple shoes located within each suitcase. In addition, the luggage appears to be the same luggage that ██████ can be seen bringing into Apartment 611 on July 27, 2025.

18.     On the same date, Columbus Special Weapons and Tactics (SWAT) executed the State of Ohio residential search warrant at 321 East Capital Street, Apartment 611. SWAT secured the apartment and did not encounter anyone inside. During a search of the apartment, investigators located two large safes within the master bedroom of the apartment which investigators believe belonged to **TINDALL** due to the size of clothing investigators observed within the bedroom and closet, which was consistent with the size and build of **TINDALL**. During a search of one of the safes, investigators located and seized multiple kilograms of suspected narcotics, United States currency, and multiple firearms. During a search of the second safe, investigators located and seized additional kilograms of suspected narcotics.

19.     In the kitchen, investigators located and seized additional kilograms of suspected narcotics within the open oven. Also, within the oven, investigators observed drug paraphernalia and narcotics manufacturing equipment with a white powdery residue. On the counter, investigators observed in plain view a container of Mannitol, a common cutting agent for drugs. In the second bedroom, investigators observed a rifle located underneath the bed.  Investigators believe the second bedroom belongs to ███████, due to a shoe that was laying on the floor which investigators observed ████████ wearing from surveillance footage on July 28, 2025. Also located within the common area of the apartment, investigators observed multiple kilogram presses, drug paraphernalia, blenders, plastic bags, rubber bands, sealer, duct tape, which investigators know to be consistent with illegal manufacturing of narcotics. Also in the apartment, investigators observed multiple money counters, and multiple pieces of mail in **TINDALL**'s name.

20.     Investigators transported the evidence seized from 321 East Capital Street, Apartment 611 to the DEA CDO for processing. At the conclusion of the search warrant, investigators located and seized the following items of evidentiary value:

   a.   approximately 30 kilograms of suspected cocaine, a Schedule II controlled substance;

   b.   approximately 15 kilograms of suspected fentanyl, a Schedule II controlled substance;

   c.   assorted bags containing substances that tested positive for cocaine and/or fentanyl weighing approximately 15 kilograms;

   d.   a loaded Glock 19 with a loaded magazine;

   e.   a Smith & Wesson M&P45 with a loaded magazine;

   f.   an Anderson Manufacturing AM-15 pistol;

8

g. a Smith & Wesson Shield with a loaded magazine; notably this firearm was reported stolen in Charleston, West Virginia in 2020;

h. a Charles Daly PAK-9 semi-automatic pistol;

i. a Springfield Armory Hellcat with one empty magazine;

j. a box of Federal 10mm Auto ammunition;

k. multiple money counters;

l. approximately $15,207 in United States currency; and

m. 6 press plates seized from the multiple kilogram presses.

At the DEA CDO, investigators field-tested multiple kilograms which resulted in the positive indication of fentanyl and/or cocaine.

21.     Investigators were able to obtain surveillance footage of the 6th floor hallway from the dates of July 29, 30, and 31, 2025. The surveillance footage was obtained from different dates and times from the previous weeks. The surveillance footage shows **TINDALL** and ▮▮▮▮▮ both utilizing the apartment often together but sometimes separately. The footage shows both **TINDALL** and ▮▮▮▮▮, on separate occasions utilizing a key to lock and unlock Apartment 611 and gain access. On one occasion, July 27, 2025, when ▮▮▮▮▮ is seen bringing suitcases into Apartment 611 utilizing a key, the geo-location data on **TINDALL**'s cellular device was in St. Louis, Missouri, and not in Columbus, Ohio. In addition, while conducting a search of Apartment 611, the majority of the drug paraphernalia, rubber bands, plastic bags, and kilogram presses were located and/or observed in plain view and in common areas of the apartment. Based on investigators training, experience, and knowledge of the case, investigators believe that **TINDALL** and ▮▮▮▮▮ share the apartment, and both have keys allowing access to it. Due to the amount of narcotics, drug paraphernalia, and illegal narcotics

9

manufacturing equipment either seized or observed in the common area of Apartment 611, investigators believe that **TINDALL** and ███████ are conspiring together to traffic large amounts of fentanyl and cocaine in the Southern District of Ohio.

22. Throughout the course of the investigation, investigators learned the following Information; **TINDALL** has a criminal history of armed robbery, armed burglary, sexual penetration with force, and evading law enforcement. ███████ has a criminal history which consists of murder, theft, resisting arrest, carrying a loaded firearm, receiving stolen property, improper handling, evading arrest, vehicle theft, hit and run, possession of marijuana, robbery, and false identification. In addition, ███████ and **TINDALL** are both identified as members of the "Crips" which is a known violent criminal organization.

## CONCLUSION

23. Based upon this information, your affiant submits that probable cause exists to believe that on or about the above dates, in the Southern District of Ohio, **TINDALL** and ███████ :

a. did knowingly and intentionally combine, conspire, confederate, and agree together to possess with the intent to distribute a least 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), and 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4—piperidinyl] propanamide (commonly known as fentanyl), in violation of 21 United States Code, Section 841 (a)(1) and (b)(1)(A)(vi), all in violation of Title 21, United States Code, Section 846; and

10

b.      did knowingly possess firearms in furtherance of a drug trafficking crime for which each may be prosecuted in a court of the United States, namely knowingly and intentionally conspiring to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, all in violation of Title 18, United States Code, Sections 924(c)(1)(A).

ALEXA L. HOOD
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Subscribed and sworn to before me
this ✕th day of August, 2025.

Kimberly A. Jolson
United States Magistrate Judge

11